**EAGLE STAR GROUP, INC., Appellant,**

v.

**David MARCUS, Esq. and Berkowitz, Oliver, Williams, Shaw & Eisenbrandt, LLP., Respondents.**

**No. WD 71622.**

Missouri Court of Appeals, Western District.

Dec. 14, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2011.

Application for Transfer Denied April 26, 2011.

David E. Larson, Liberty, MO, Michael W. Blanton, Leawood, KS, for Appellant.

Steven H. Schwartz, St. Louis, MO, for respondents.

Before MARK D. PFEIFFER, P.J., JAMES EDWARD WELSH, and KAREN KING MITCHELL, JJ.

JAMES EDWARD WELSH, Judge.

Eagle Star Group, Inc., appeals from a judgment entered upon a jury verdict in favor of David Marcus and Berkowitz, Oliver, Williams, Shaw & Eisenbrandt, LLP, on a claim for legal malpractice. Eagle Star had hired Berkowitz Oliver[1] to set aside a default judgment previously entered against Eagle Star, but Berkowitz Oliver was unsuccessful in getting the default judgment set aside. In its legal malpractice case, Eagle Star claimed that Berkowitz Oliver committed legal malpractice when it failed to raise the issue of a defective return of service in the motion to set aside a default judgment. A jury disagreed and found in favor of Berkowitz Oliver, and the circuit court entered judgment consistent with the jury's verdict. Eagle Star appeals, asserting that the circuit court erred (1) in limiting Eagle Star's ability to present evidence regarding the amendment of the return of service and allowing Berkowitz Oliver to argue that the return would have been amended and (2) in admitting into evidence an agreement made between Eagle Star and the attorney and plaintiff from the default judgment case. We affirm.

The evidence established that, in 2002, Robin McElroy was living in the Stone Oak Apartments. While working on McElroy's apartment air conditioner, maintenance workers for the apartment complex placed a light bulb in one of McElroy's light fixtures. When McElroy later attempted to remove the light bulb, the glass lens on the light fixture fell off, injuring McElroy's hand and wrist. Thereafter, McElroy hired Steven Effertz on a contingency fee basis to litigate her personal injury action against Eagle Star. Effertz filed a Petition for Damages on behalf of McElroy with the circuit court, alleging that Eagle Star owned and operated the apartments and that maintenance workers failed to sufficiently secure the glass lens on a light fixture, causing it to come loose and break when McElroy tried to change the light bulb.

After filing the petition, Effertz requested court appointment of a private process server to serve the petition on Eagle Star. Effertz intended the process to be served on Eagle Star through its registered agent, who Effertz mistakenly believed to be Michael Jaax. Jaax was not the registered agent, but he was Eagle Star's president. Ultimately, the private process server left a copy of the summons and petition with Jaax's wife at Jaax's house. The process server prepared a return of service that stated: "I certify that I have served the above summons by: ... leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with Mike Jaxx (sic) Wife...." Jaax's wife was Eagle Star's corporate secretary and treasurer at the time of the service.

Upon receiving the petition from his wife, Jaax notified his insurance agent of the claim and forwarded the petition. Jaax was told by the insurance agent that his insurance company would take care of the claim.

When no answer was filed to respond to McElroy's petition, Effertz filed a Motion

[1]. We refer to Berkowitz, Oliver, Williams, Shaw & Eisenbrandt, LLP, and David Marcus collectively as Berkowitz Oliver.

for Default Judgment on behalf of McElroy against Eagle Star. The circuit court granted the motion, and, after a hearing on McElroy's damage claim, the circuit court entered a $369,000 judgment for McElroy against Eagle Star. Thereafter, Effertz sent a copy of the court's default judgment to Eagle Star. After receiving the default judgment, Eagle Star learned that its insurance agent had not obtained insurance coverage on the apartments. Thus, Eagle Star hired the law firm of Berkowitz, Oliver, Williams, Shaw & Eisenbrandt, LLP, to address its legal options with respect to the default judgment. The law firm assigned the handling of Eagle Star's case to David Marcus, who was an attorney at the firm.

Berkowitz Oliver filed a Motion to Set Aside the Default Judgment based on excusable neglect in failing to file an answer. Berkowitz Oliver further argued Eagle Star had a meritorious defense to McElroy's action based on lack of ownership of the property. Effertz, on behalf of McElroy, argued against setting aside the default judgment. The circuit court denied Eagle Star's motion, and this court affirmed the circuit court's decision. *McElroy v. Eagle Star Group, Inc.*, 156 S.W.3d 392 (Mo.App.2005), *superseded by rule as stated in Pyle v. Firstline Transp. Sec., Inc.*, 230 S.W.3d 52 (Mo.App.2007). Effertz then began collection efforts on behalf of McElroy on the default judgment. After garnishing $6,000 from Eagle Star, Effertz determined Eagle Star did not have sufficient assets to satisfy the default judgment.

During his collection efforts, Effertz learned that Eagle Star sent McElroy's petition to its insurance agent and that the insurance agent led Eagle Star to believe that an insurance company would defend the claim. Effertz believed Eagle Star had a potential claim against its insurance agency for leading Eagle Star to believe that an insurance company would defend the case but then failing to see that a defense was provided. Thus, Effertz proposed an agreement to Eagle Star on behalf of McElroy in which Effertz agreed that he would represent Eagle Star and pursue a claim against R.J. Ahmann Company, WKF & C Agency, Inc., and CRC Insurance Services, Inc., (hereinafter referred to as "the insurance companies") on Eagle Star's behalf and use the proceeds to satisfy McElroy's default judgment against Eagle Star.

On October 28, 2005, Effertz, McElroy, and Eagle Star entered into an Agreement to Retain Counsel. Eagle Star agreed to hire Effertz to litigate its claims against the insurance companies and to pay litigation costs up to $2,500. McElroy agreed not to pursue collection of the default judgment so long as this litigation was pending. Moreover, if the parties settled the case against the insurance companies, McElroy agreed to accept the settlement proceeds in full satisfaction of her default judgment against Eagle Star, regardless of the amount. In particular, the agreement said:

> If McElroy and [Effertz] agree to settlement of Eagle Star's claim against Ahmann, et al., and the amount of the settlement is less than the full amount due from Eagle Star to McElroy for her judgment, then the parties agree that the full amount received by Eagle Star shall be paid to McElroy, and McElroy shall immediately acknowledge satisfaction in full for her judgment against Eagle Star.

In the meantime, when it became clear that Effertz would be called as a witness in the litigation against the insurance companies, Attorney David E. Larson took over the lead representation of McElroy and Eagle Star against the insurance compa-

nies, and Effertz continued to help with the representation. Thereafter, the insurance companies agreed to settle Eagle Star's claim for $240,000. In conjunction with that settlement, Larson and Effertz entered into another agreement with Eagle Star on behalf of McElroy. In the Second Addendum to Agreement to Retain Counsel, Eagle Star agreed to allow McElroy to file a legal malpractice claim against Berkowitz Oliver in Eagle Star's name.

In exchange for Eagle Star's agreement to sue Berkowitz Oliver, McElroy agreed that, regardless of the outcome of this litigation, she would make no further attempts to collect on the default judgment against Eagle Star. The Second Addendum to Agreement provided: "Robin McElroy agrees that she will not pursue recovery of her judgment against Eagle Star, or Mike Jaax or Pam Jaax." Eagle Star agreed that the legal malpractice case would "be instituted in its name" and that McElroy would have the "exclusive authority to accept or reject any settlement offer" in this suit. McElroy also agreed to reimburse Eagle Star for the $6,011 that she had garnished from Eagle Star's bank account and for the $2,500 in lawsuit expenses that Eagle Star had paid for the lawsuit against the insurance companies. According to the Second Addendum to the agreement, this addendum superseded the original agreement to retain counsel; however, the Second Addendum to the agreement said that "[t]o the extent any provision set forth herein is in conflict with any prior provision, the terms of [the] Second Addendum control."

Thereafter, Larson filed a claim for legal malpractice in Eagle Star's name against Berkowitz Oliver with the circuit court. The petition alleged that Berkowitz Oliver committed legal malpractice when it failed to raise the issue of a defective return of service in the Motion to Set Aside Default Judgment it prepared on Eagle Star's behalf. In response, Berkowitz Oliver argued that, because service was made upon an officer of Eagle Star, the issue of a defective return would not have been a viable ground for setting aside the default judgment. In particular, Berkowitz Oliver contended that the circuit court could have, and likely would have, exercised its discretion and allowed an amendment to the return of service pursuant to Rule 54.22(a). Berkowitz Oliver also argued that Eagle Star had no damages because of the negotiated agreement with McElroy that relieved Eagle Star of all liability under the default judgment.

After a trial, a jury entered its verdict for Berkowitz Oliver. The circuit court entered judgment consistent with the jury's verdict and denied Eagle Star's Motion for New Trial. Eagle Star appeals.

■ In its first point on appeal, Eagle Star contends that the circuit court erred in limiting Eagle Star's ability to present evidence regarding the amendment of the return of service and in allowing Berkowitz Oliver to argue that the defective return of service would have been amended. Eagle Star asserts that the circuit court's rulings were based upon erroneous conclusions that the return of service could have and would have been amended in this case. We disagree.

■ Before addressing the merits of Eagle Star's point, we note that Eagle Star's point relied on is insufficient under Rule 84.04 because it fails to identify the specific rulings or actions of the circuit court being challenged. In its point relied on, Eagle Star makes broad statements that the circuit court erred "in limiting Eagle Star's ability to present evidence" and in "allowing [Berkowitz Oliver] to argue" about amending the defective return of service. Eagle Star's point merely references general rulings of the circuit court

but does not otherwise identify the specific challenged actions of the circuit court. A blanket challenge that does not identify a specific circuit court ruling or action being challenged does not comply with Rule 84.04(d)(1)(A). A point relied on that does not identify the specific circuit court error preserves nothing for appellate review. *Columbia Mut. Ins. Co. v. Long,* 258 S.W.3d 469, 473 (Mo.App.2008). However, in the argument portion of its brief, Eagle Star does set forth several evidentiary rulings by the circuit court concerning the amendment issue which Eagle Star asserts were erroneous. Thus, despite Eagle Star's violation of Rule 84.04, we will review its claim *ex gratia* because we are able to glean the issues from its brief.

The parties do not dispute that the return of service in this case did not reflect proper service upon a corporation because a corporation cannot be served by serving an individual through a family member at his usual place of abode. *See Kirlin v. Daclo, Inc.,* 719 S.W.2d 516 (Mo.App. 1986).[2] Service upon a corporation, however, can be obtained by delivering a copy

of the summons and petition to an officer of the corporation. Rule 54.13(b)(3); § 506.150.1(3), RSMo 2000. The parties do not dispute that a copy of the summons and petition were left with Pam Jaax and that Pam Jaax is an officer of Eagle Star. The return of service, however, did not reflect service upon Eagle Star through Pam Jaax as an officer of Eagle Star but reflected service upon Eagle Star through its registered agent (who Eagle Star erroneously believed was Mike Jaax) "by leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant /Respondent with Mike Jaxx (sic) wife a person of the Defendant/Respondent's family over the age of 15 years."

Eagle Star asserts that Berkowitz Oliver committed legal malpractice when it failed to raise the issue of a defective return of service in the motion to set aside a default judgment. Berkowitz Oliver argues, however, that it did not commit legal malpractice by failing to raise the issue of a defective return of service because the return of service could have been amended pursuant

---

**2.** In *Kirlin,* the plaintiff filed suit against a corporate defendant and directed that service be had upon the corporation's registered agent, Steven Day. *Kirlin,* 719 S.W.2d at 517. The return of service indicated that service had been accomplished by leaving a copy of the summons with Karen Day, the wife of Steven Day, at Steven Day's usual place of abode. *Id.* Following entry of a default judgment for plaintiff, the defendant sought to set aside the default judgment on the basis that service of process was defective and that the circuit court had not acquired jurisdiction over the defendant. *Id.* This Court held that service was not properly accomplished because the summons was not left with one of the persons specifically identified as capable of receiving service pursuant to section 506.150, RSMo. *Id.* The plaintiff argued that service was proper because Karen Day was an officer of the defendant corporation and, thus, service was made upon one of the individuals recognized as a proper recipient of

service under section 506.150. *Id.* at 518. The *Kirlin* court rejected that argument, finding that the return did not show that Karen Day was served but rather that Steven Day was served by leaving the summons with Karen Day. *Id.* The *Kirlin* court said, "Compliance with the statute would have required a return showing service on Karen Day as an officer of [the corporation]." Accordingly, the *Kirlin* court held that the circuit court did not obtain jurisdiction over the defendant and that the default judgment should be set aside. *Id.* The *Kirlin* court, however, was not presented with the issue of whether a defective return of service could be amended. Indeed, to argue that *Kirlin* held that a return of service cannot be amended to comport with the facts of service would be directly contrary to Rule 54.22, which says that a return of service may be amended at any time unless it materially prejudiced a substantial right of Eagle Star.

to Rule 54.22(a). Rule 54.22(a) provides: "The court may in its discretion allow any process, return or proof of service thereof to be ... amended at any time unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued." *See also* § 506.190, RSMo 2000. Indeed, a return may be amended to conform to the facts. *Bauch v. Weber Flour Mills Co.*, 210 Mo.App. 666, 238 S.W. 581, 583 (1922).

Thus, pursuant to Rule 54.22(a), the return of service in this case could have been amended at any time unless it materially prejudiced a substantial right of Eagle Star. In reaching its conclusion that that the return was amendable, the circuit court said:

> [I]t is apparent ... that there never was a defect in service in this case. . . . . There was, at the most, a defect in the return of service, and the two are distinctive. A defect in service in this case would have meant that somebody was served who didn't have the ability to be served on behalf of the corporation. . . . So to say that service on an officer of the corporation ... was defective is ... a misstatement of law.
>
> . . . .
>
> ... The purpose of [Rule 54.22] is to allow the correction of the memorialization of service. . . . And if the change in the return of service would have demonstrated that somebody who had the capacity to be served on behalf of the corporation would have demonstrated beyond any doubt that proper service ... was affected in this case, then ... the ends of justice would have been served and therefore the rule and the reason for the rule would have been satisfied by the filing of an amended return of service.

We agree with the circuit court that, because Pam Jaax was an officer of Eagle Star, the return of service could have been amended in this case to conform to the facts and to reflect proper service upon Eagle Star.

Eagle Star asserts, however, that, even if the return could have been amended, it was still a factual issue for the jury to decide whether or not the circuit court would have exercised its discretion under Rule 54.22(a) and granted a motion to amend the return. In essence, Eagle Star would have the jury decide whether the circuit court would have abused its discretion in refusing to allow the amendment to the return of service. We do not believe that this was a fact issue for the jury but instead agree with the circuit court that it was an issue for the court to decide. Indeed, in its order denying Eagle Star's Motion for New Trial, the circuit court found that, even if Berkowitz Oliver had raised the issue of the deficiencies in the return of service in its Motion to Set Aside the Default Judgment, "it would have amounted to an abuse of discretion for [the circuit court] to refuse to allow the return to be amended to reflect the uncontroverted fact that service was had on a corporate officer of Eagle Star." The circuit court, therefore, did not err in concluding that not only could the return of service be amended but that the circuit court would have exercised its discretion and granted a motion to amend the return in this case.

■■■ To the extent that Eagle Star complains about the circuit court's limiting its ability to present evidence regarding the amendment of the return of service, its contention is without merit. Eagle Star asserts that the circuit court erred in admitting David Marcus's testimony that the return would have been amended and that it would have been pointless to seek to set aside the default judgment on the basis of

defective service. That testimony, however, was elicited by Eagle Star's own counsel. "A party cannot complain that the trial court improperly received evidence that was introduced by that party." *Foster v. Vill. of Brownington*, 140 S.W.3d 603, 609 (Mo.App.2004). Moreover, Eagle Star did not object or request the circuit court to strike the testimony. "Timely objections are required as a condition precedent to appellate review in order to afford the trial court an opportunity to correct any mistakes immediately and inexpensively without risking the delay and expense of an appeal and a retrial." *Gomez v. Constr. Design, Inc.*, 126 S.W.3d 366, 371 (Mo. banc 2004).

■ Eagle Star further asserts that it should have been allowed to question Marcus on case law which Eagle Star believed would have undercut Marcus's opinion that the return of service could be amended. Such an inquiry, however, would have invaded the circuit court's province on matters of law. The courts declare the law and apply the law to the facts. *Gershman Inv. Corp. v. Danforth*, 517 S.W.2d 33, 35 (Mo. banc 1974); *Adams By and Through Adams v. Children's Mercy Hosp.*, 832 S.W.2d 898, 907 (Mo. banc), *cert. denied*, 506 U.S. 991, 113 S.Ct. 511, 121 L.Ed.2d 446 (1992). " '[T]he function of the jury [is] to decide fact issues; they should not be asked to pass upon questions of law.' " *Gillioz v. State Highway Comm'n*, 348 Mo. 211, 153 S.W.2d 18, 26 (1941) (citation omitted).

■ Eagle Star also complains that the circuit court erroneously refused to allow testimony from former Judge Robert A. Russell and attorney Effertz that the return of service could not be amended and, therefore, the circuit court would not have permitted such an amendment. Again, whether or not the return of service could be amended was a question of law for the

circuit court to decide. Indeed, the circuit court determined that, pursuant to Rule 54.22(a), the return could have been amended. Thus, the circuit court did not err in excluding Russell's and Effertz's testimony on this issue because such testimony would have constituted an improper statement of the law or, at least, a statement of the law contrary to that determined by the circuit court and certainly not relevant to any issue the jury would be called upon to decide.

■ Finally, Eagle Star complains that the circuit court erred in allowing Berkowitz Oliver to argue during closing arguments that the defective return of service would not have been an effective argument in the Motion to Set Aside the Default Judgment. In its closing argument, Berkowitz Oliver argued that, if it had raised the issue of the defective return in the Motion to Set Aside the Default Judgment, Effertz would have moved to amend the return and the circuit court would have granted the motion. In closing argument, counsel is afforded wide latitude to argue the evidence and inferences drawn from the evidence. *Giddens v. Kansas City S. Ry. Co.*, 937 S.W.2d 300, 308 (Mo.App. 1996). Berkowitz Oliver's closing argument merely recounted the reasonable inferences based on the testimony and evidence admitted during trial. The evidence established that Effertz vigorously and successfully defended Berkowitz Oliver's Motion to Set Aside the Default Judgment. It was reasonable for Berkowitz Oliver to infer in its closing argument that Effertz would have vigorously defended against any attempt to set aside the default judgment based upon a defective return of service and would have sought to amend the return of service to preserve the default judgment and that the circuit court would have allowed the amendment.

■ In its second point, Eagle Star contends that the circuit court erred in

admitting into evidence the original Agreement to Retain Counsel entered into by Eagle Star, Effertz, and McElroy. Eagle Star asserts that the original agreement was not relevant to any issue in this case because it had been rendered a nullity by virtue of a subsequent Second Addendum to Agreement to Retain Counsel. Further, Eagle Star claims that no special circumstances existed warranting the admission of the original agreement. We disagree.

■■■■■ We give substantial deference to the circuit court's decisions to admit evidence, which we disturb only upon a showing of abuse of discretion. *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991). The circuit court abuses its discretion " 'when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.' " *Id.* (citation omitted). "To be admissible, evidence must be logically and legally relevant." *Whelan v. Mo. Pub. Serv., Energy One*, 163 S.W.3d 459, 462 (Mo.App.2005). "Evidence is logically relevant if it tends to prove or disprove a fact in issue or corroborates other evidence." *Id.* " 'Legal relevance involves a process through which the probative value of the evidence (its usefulness) is weighed against the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence (the cost of evidence).' " *Id.* (quoting *Guess v. Escobar*, 26 S.W.3d 235, 242 (Mo.App.2000)).

Eagle Star argues that its original Agreement to Retain Counsel is not logically relevant because the agreement was superseded by a subsequent agreement. The original Agreement to Retain Counsel included the following provision:

Neither [Effertz], McElroy or Eagle Star shall settle the case without the others approval. If McElroy and [Effertz] agree to settlement of Eagle Star's claim against [the insurance companies], and the amount of the settlement is less than the full amount due from Eagle Star to McElroy for her judgment, then the parties agree that the full amount received by Eagle Star shall be paid to McElroy, and McElroy shall immediately acknowledge satisfaction in full for her judgment against Eagle Star.

Eagle Star argues, however, that, when the claim against the insurance companies was settled, the original Agreement to Retain Counsel had been superseded by the Second Addendum to Agreement to Retain Counsel. Although the Second Addendum to the agreement stated that it superseded the original Agreement to Retain Counsel, the Second Addendum also said that "to the extent any provision set forth herein is in conflict with any prior provision, the terms of [the] Second Addendum control." Given this language, we do not believe that the original Agreement to Retain Counsel was superseded in its entirety by the Second Addendum. It was only superseded "to the extent any provision set forth herein is in conflict with any prior provision."

Moreover, although the parties to the original Agreement to Retain Counsel may have thought that the original agreement was superseded by the Second Addendum, the original agreement remained relevant on the issue of damages resulting from any alleged legal malpractice by Berkowitz Oliver in the default judgment case. The original Agreement to Retain Counsel, therefore, was logically relevant because the agreement was central to the issue of damages in this malpractice action.

■■■ The original Agreement to Retain Counsel was also legally relevant in that

its probative value outweighed any prejudice to Eagle Star. The agreement was probative on the issue of damages and did not confuse the issues or mislead the jury. Eagle Star complains that it was prejudiced by Berkowitz Oliver using the original Agreement to Retain Counsel against it when discussing the issue of damages, but this is exactly why the original agreement was relevant. That agreement, by its terms, limited, if not eliminated, the damages Eagle Star claimed to have suffered.

 Eagle Star further argues that the circuit court abused its discretion in admitting the original Agreement to Retain Counsel into evidence because the agreement's admission violated the rule prohibiting the admission of settlement agreements into evidence. Indeed, generally, evidence of settlement agreements is not admissible. *O'Neal v. Pipes Enters., Inc.*, 930 S.W.2d 416, 423 (Mo.App.1995). "This is because settlement agreements tend to be highly prejudicial and, thus, should be kept from the jury unless a clear and cogent reason exists for admitting a particular settlement agreement." *Id.* In this case, Berkowitz Oliver offered the original Agreement to Retain Counsel on the issue of damages. As previously discussed, the original agreement was relevant on the issue of damages that Eagle Star may have suffered as a result of any legal malpractice committed by Berkowitz Oliver. The circuit court, therefore, did not err in admitting into evidence the original Agreement to Retain Counsel entered into by Eagle Star, Effertz, and McElroy.

We, therefore, affirm the circuit court's judgment.

All concur.