

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| EIGHTY HUNDRED CLAYTON CORP., ) | No. ED110390 | |
| ) | | |
| Respondent, ) | Appeal from the Circuit Court of | |
| ) | St. Louis County | |
| vs. ) | 21SL-CC00107 | |
| ) | | |
| LAKE FOREST DEVELOPMENT CORP, ) | Honorable William M. Corrigan, Jr. | |
| ) | | |
| Appellant. ) | Filed: July 26, 2022 | |

Michael E. Gardner, C.J., James M. Dowd, J., and Lisa P. Page, J.

## Opinion

This dispute concerns whether a lessee exercised its option to renew a commercial lease (Lease). Appellant-lessor Lake Forest Development Corporation appeals the judgment in which the trial court declared (1) that respondent-lessee EHCC Clayton Corporation's actions of holding over and continuing to pay rent after the previous lease term ended on October 31, 2019, constituted as a matter of law the exercise by EHCC of its option to renew the Lease for another 10-year term through October 31, 2029, and (2) that Lake Forest, by accepting the rent payments, waived its right under the Lease to receive formal written notice of EHCC's intent to renew. We agree with the trial court and affirm.

Lake Forest makes numerous assertions of trial-court error, some of which we dismiss for violating Rule 84.04.[1] As for the points we review here, Lake Forest asserts the trial court erred (1) by failing to treat EHCC's president's testimony that he knew of no excuse for EHCC's failure to give timely written renewal notice as a judicial admission that the Lease had not been renewed; (2) by failing to treat EHCC's attempt to cure its failure to give such timely written notice as a binding admission that the Lease had expired on October 31, 2019; (3) by failing to find that EHCC's counsel's May 28, 2020, letter did not cure EHCC's failure to give timely written renewal notice; (4) by failing to declare that EHCC failed to satisfy the conditions precedent to the exercise of its renewal option; (5) by failing to find that EHCC's inconsistent rent payments post-October 31, 2019, did not support a finding that an implied tenancy existed between the parties; (6) by finding that EHCC's rent payments made after Lake Forest purported to terminate the Lease failed to support a finding that an implied tenancy existed; and (7) by failing to find that EHCC's failure to provide timely written renewal notice meant the Lease was not renewed and had terminated. We find no merit in any of Lake Forest's viable points.

### Background

In 1959, Lake Forest, as sub-lessor, entered into the Lease with EHCC, as sub-lessee, for real estate located along Clayton Road in Richmond Heights, Missouri. In 1960, EHCC opened a newly-constructed 52-lane bowling alley now known as Tropicana Lanes. Following multiple renewals, the most recent 10-year term—the one at issue in this case—was set to expire on October 31, 2019.

The Lease gives EHCC the option to renew the Lease for successive ten-year terms until 2049 at the same price, which EHCC has done multiple times. To exercise its option to renew,

---

[1] All Rule references are to the Missouri Supreme Court Rules (2020).

the Lease requires EHCC to notify Lake Forest in writing at least six months before the end of the term. In this case, October 31, 2019 was the end of the term, meaning the notice to renew was due no later than April 30, 2019. There is no evidence that EHCC notified Lake Forest in writing by April 30, 2019 of its intent to renew.

As far as rent is concerned, the Lease requires EHCC to pay $1,250 monthly rent plus six percent of monthly gross receipts from the bowling business, which are in excess of $20,833.[2] To calculate this additional rent, the Lease requires EHCC to provide Lake Forest a statement of monthly gross receipts along with a statement from a CPA by October 1 of each year of the annual gross receipts from the bowling business for each fiscal year ending August 31. If Lake Forest is not satisfied with any such statement, the Lease requires it to notify EHCC within sixty days of its dissatisfaction.

According to Lease paragraph 36, if rent remains unpaid more than thirty days past due, or if EHCC fails "to fulfill any of the other terms and conditions hereof at the time and in the manner called for herein,... [Lake Forest] may, at its option, declare a forfeiture" of the Lease.[3] To do so, Lake Forest is required to provide EHCC written notice at least sixty days before the forfeiture's effective date and "state specifically and in detail the ground or cause for which the right of forfeiture is claimed." The purpose of the sixty-day notice of forfeiture is to give EHCC an opportunity to cure the default. If it cures the default, Lake Forest's "right of forfeiture" is "abated and discontinued."

When the prior lease term expired on October 31, 2019, EHCC held over in possession and continued to pay monthly rent which Lake Forest continued to accept and deposit. With the

---

[2] The Lease contains several provisions concerning the calculation of rent for partial periods of time, none of which is relevant to this case.
[3] The Lease also refers to the cause of a forfeiture as a "default."

3

exception of the months of April, May, and June 2020, EHCC made all monthly rent payments from November 2019 through April 2021 within 30 days of their due dates and Lake Forest deposited those payments. Lake Forest stopped depositing EHCC's rent payments when this litigation commenced.

With respect to the April, May, and June 2020 rent payments, EHCC's president Timothy Ronan explained those were not timely paid because the bowling alley was closed pursuant to the county executive's Covid-19 order closing all non-essential businesses. The overdue amounts were paid to and accepted by Lake Forest in April 2021.

On May 19, 2020, some six months beyond the end of the prior lease term and over a year after EHCC's written renewal notice was due, Lake Forest notified EHCC that because Lake Forest had not received EHCC's renewal notice, Lake Forest considered the Lease to be expired as of October 31, 2019. On May 28, 2020, EHCC responded: "With respect to your inquiry regarding the renewal notice that was due by April 30, 2019, such renewal notice would have been hand delivered to Lessor along with the monthly percentage rent payment in January 2019. To the extent Lessor cannot locate the renewal notice, this letter should serve as confirmation of Lessee's renewal of the lease term on the same terms and conditions under the lease for the period from November 1, 2019, through October 31, 2029 (the 'Renewal Term')." After this correspondence, Lake Forest continued to accept and deposit rent payments until early 2021.

On September 25, 2020, Lake Forest's counsel emailed EHCC that its annual CPA gross receipts statement was due October 1, 2020. EHCC timely produced the statement from its CPA, Sikich LLP.

On November 4, 2020, Lake Forest filed its petition for unlawful detainer to terminate EHCC's possession of the property. On January 11, 2021, EHCC filed its own action seeking a

4

declaratory judgment that it exercised the renewal option as a matter of law by holding over and paying rent, that Lake Forest waived the Lease's written renewal notice requirement by accepting rent, and that the Lease was renewed until November 1, 2029.

Following a December 10, 2021, bench trial, the trial court entered judgment in favor of EHCC. The court found that, while EHCC failed to give its written renewal notice by April 30, 2019, as required by the Lease, "by remaining in possession and paying rent after the expiration of the lease," EHCC elected to exercise its renewal option through October 31, 2029, and that by accepting the rent, Lake Forest waived the Lease's written renewal notice requirement.

## Standard of Review

We will affirm the judgment in a court-tried case unless there is "no substantial evidence to support it, it is against the weight of the evidence, erroneously declares the law, or erroneously applies the law." *Brown v. Brown*, 423 S.W.3d 784, 787 (Mo. banc 2014); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We review conflicting evidence in the light most favorable to the judgment. *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014). This Court defers to the trial court's credibility determinations and when the evidence poses two reasonable but different inferences. *Id*. We accept as true the evidence and inferences favorable to the judgment below and disregard all contrary evidence. *United Services Auto. Ass'n Cas. Ins. Co. v. Sorells*, 910 S.W.2d 774, 777 (Mo. App. E.D. 1995).

## Discussion

Before addressing Lake Forest's arguments, we address the merits of the trial court's ruling that, by holding over and continuing to pay rent after the October 31, 2019, expiration of the parties' prior 10-year lease term, EHCC exercised its renewal option as a matter of law, and

5

that by accepting those rent payments for well over a year into the new lease term, Lake Forest waived its right under the Lease to receive EHCC's written renewal notice.

The trial court's judgment rests on solid legal footing. Under the law concerning options to extend, when a lease provides that a tenant has the option to extend the term of the lease with a written notice requirement, "the option is for the benefit of the lessee, and [the] written notice requirement is for the benefit of the lessor." *Grand Inv. Corp. v. Connaughton, Boyd & Kenter, P.C.*, 119 S.W.3d 101, 107 (Mo. App. W.D. 2003) (quoting *Pelligreen v. Century Furniture & Appliance Co.*, 524 S.W.2d 168, 171 (Mo. App. 1975)). By remaining in possession and paying rent after the expiration of the lease, the lessee elects to exercise the option. *Id.*; *Blanchon v. Kellerstrass Distilling Corp.*, 208 S.W. 484, 485 (Mo. App. 1919).

Simply by accepting rent, the lessor waives the written notice requirement. *Grand Inv. Corp.,* 119 S.W.3d at 107. Moreover, the lessor does not need to accept rent for the entire renewal period to waive the written notice requirement. *See Snowden v. Dawdy*, 343 S.W.2d 197, 198-99 (Mo. App. 1960) (when lessor accepted rent for 28 months of five-year lease option before challenging lease renewal, this acceptance effected renewal of lease). When these factors are proven, the lessee is deemed to have exercised the renewal or extension option as a matter of law, and the tenancy continues upon the same terms, conditions, and covenants as in the lease. *Grand Inv. Corp.,* 119 S.W.3d at 107.

These authorities are directly on point here. As the key dates came and went, i.e., the April 30, 2019, deadline for EHCC to submit to Lake Forest its written renewal notice, and the October 31, 2019, expiration of the lease term, the parties continued with business as usual. EHCC continued to operate the bowling alley and make its rent payments, and Lake Forest continued to accept the rent and otherwise remained silent on the question of renewal. Not until

6

May 2020, some seven months into the new lease term, did Lake Forest claim the Lease had not been renewed. Even after that correspondence, Lake Forest continued to accept EHCC's rent payments until early 2021 when it initiated litigation.

As such, the trial court's judgment is affirmed because it correctly declared and applied the law and is supported by substantial evidence. *Brown,* 423 S.W.3d at 787 (citing *Murphy*, 536 S.W.2d at 32).

We now turn to Lake Forest's arguments. Lake Forest has submitted nine points of error. The first two are amended points it designated "amended points 1 and 2." It numbered the following seven points "I - VII." For ease of analysis, we have renumbered Lake Forests' points as I - IX.

**Points I & II**

Lake Forest's potpourri of claims of trial-court error in these two points render them multifarious, which preserve nothing for this Court to review. *Barbieri v. Barbieri*, 633 S.W.3d 419, 432 (Mo. App. E.D. 2021) (citing Rule 84.04). A multifarious point is one that groups together multiple, independent claims rather than a single claim of error. *Id.* Generally, multifarious claims of error preserve nothing for appeal and are subject to dismissal. *Id*.; *see also In re Marriage of Cochran*, 340 S.W.3d 638, 647 (Mo. App. S.D. 2011).

Point I is multifarious because Lake Forest claims the trial court erred in at least three separate ways: (1) by improperly shifting the burden to provide the lease-renewal notice from EHCC to Lake Forest; (2) by finding that EHCC paid rent through 2021 when the record shows that EHCC did not timely pay the April, May, and June 2020, rent; and (3) by finding that EHCC's May 20, 2020, renewal notice was sufficient as a matter of law.

7

Point II is also multifarious.  Lake Forest claims the trial court erred (1) when it misconstrued certain case authorities, including *Snowden v. Dawdy*, 343 S.W.2d 197, 199 (Mo. App. 1960), and *Pollock v. Adams*, 548 S.W.2d 239, 242 (Mo. App. 1977); (2) when it shifted the burden to Lake Forest regarding whether EHCC gave a timely renewal notice; (3) when it considered the rent payments EHCC made *after* Lake Forest's May 19, 2020, letter purporting to terminate the Lease; (4) when it ignored Lease paragraph 38's language that "no waiver of any forfeiture or grounds of forfeiture, by acceptance of rent or otherwise, shall waive any subsequent cause of forfeiture or breach of any condition of this lease"; and (6) by finding that EHCC's failure to timely renew the Lease in writing was a curable forfeiture.  We decline to consider these overt violations of Rule 84.04 and dismiss points I and II.

**Point III**

In point III, Lake Forest argues that EHCC president Timothy Ronan's testimony, that he was "not aware of" anything that excused EHCC's failure to give the timely written renewal notice required by the Lease, was a judicial admission that the Lease had not been renewed.  We disagree.  Lake Forest seeks to transform a statement by a lay witness into a binding legal conclusion that would invade the province of the trial court and of this Court to decide, pursuant to the well-established Missouri law set forth earlier in this Opinion, whether EHCC exercised its option to renew as a matter of law by holding over and continuing to pay rent, which Lake Forest accepted and deposited for many months.

Generally, opinion testimony on issues of law is not admissible.  *Howard v. City of Kansas City*, 332 S.W.3d 772, 785 (Mo. banc 2011).  Such testimony invades the circuit court's province on matters of law.  *Eagle Star Group, Inc. v. Marcus*, 334 S.W.3d 548, 556 (Mo. App.

8

W.D. 2010). Courts declare the law and apply the law to the facts. *Id*. (citing *Gershman Inv. Corp. v. Danforth*, 517 S.W.2d 33, 35 (Mo. banc 1974)).

Under the facts of this case, renewal of this Lease could occur in one of two ways. First, EHCC could have provided Lake Forest a renewal notice in writing by April 30, 2019. Since it failed to do that, it was left with the legal doctrine that holding over, paying rent, and the lessor's acceptance of rent may constitute the exercise of the lease-renewal option as a matter of law. Lake Forest asks this Court to disregard this well-established doctrine on the strength of a lay witness's testimony regarding whether he was "aware" of any excuse for his failure to comply with the Lease's written renewal notice provision. We are unpersuaded and deny this argument because it invades the province of the court on legal matters. Point III is denied.

**Point IV**

In point IV, Lake Forest relies on statements made by EHCC in its May 28, 2020, letter to Lake Forest in which it (1) acknowledged its failure to provide the timely renewal notice required by the Lease, and (2) claimed the letter constituted an effective renewal notice. Lake Forest contends these statements constitute admissions that the Lease had not been renewed but had expired on October 31, 2019. We disagree.

These statements by EHCC are irrelevant to our decision in this case. The first statement simply confirms what is undisputed here, that EHCC failed to exercise its renewal option as provided for in the Lease. Second, whether EHCC attempted to renew the Lease with a letter written over a year past the April 2019 renewal deadline is likewise irrelevant to our decision. Our decision depends not on whether EHCC complied with the lease-renewal provision—which it concedes it did not—but on whether the Lease was renewed as a matter of law. EHCC remained in possession of the premises and continued to pay rent, and Lake Forest accepted

9

these rent payments from EHCC.  As a result, the Lease renewed as a matter of law.  *See Grand Inv. Corp.,* 119 S.W.3d at 107.  Therefore, to the extent Lake Forest argues the lessee can waive these well-established principles of law by an admission that it failed to adhere to the Lease by providing written notice of renewal, this argument is unavailing.  Point IV is denied.

### Point V

In point V, Lake Forest claims its May 19, 2020, letter constituted a forfeiture notice that EHCC did not have the contractual right to cure.  We disagree.

First, Lake Forest's letter is not a forfeiture notice.  It is simply a statement from Lake Forest to EHCC that Lake Forest did not receive EHCC's written renewal notice and therefore that Lake Forest considered the Lease to have expired on October 31, 2019.  While that may have been Lake Forest's legal position then and throughout this litigation, its letter was not a forfeiture notice under the Lease.

A forfeiture notice is described in detail in paragraph 36 of the Lease.  It requires Lake Forest to identify the terms and conditions of the Lease it contends EHCC has failed to comply with and also requires Lake Forest to give EHCC sixty days to cure the non-compliance.

Consequently, since this was not a forfeiture notice, Lake Forest's claim that EHCC had no right to cure is a *non sequitur*.  There was no default identified in the letter that needed to be cured.  Instead, the Lease already had been renewed by the parties' conduct, including Lake Forest's acceptance of rent both before and after its claimed forfeiture letter of May 19, 2020.  Point V is denied.

### Point VI

In its sixth point, Lake Forest argues the trial court erred in declaring the Lease renewed because EHCC's failure to provide Lake Forest the 2018 and 2019 gross receipts statements from

10

its CPA and its failure to pay certain rents due under the prior lease term precluded EHCC from exercising its renewal option. We disagree because Lake Forest misconstrues its own Lease.

In order to declare a forfeiture for EHCC's failure to timely pay rent or to provide annual CPA statements, the Lease required Lake Forest to provide EHCC a notice and an opportunity to cure. The record here is devoid of any forfeiture notice or any complaint whatsoever by Lake Forest with EHCC's compliance with the prior term of the Lease. At trial, the only notice in evidence regarding a CPA statement was a September 25, 2020, email from Lake Forest to EHCC reminding it that its CPA statement was due on October 1, 2020.[4]

Additionally, with the exception of one rent check returned for insufficient funds in August 2020, of which Lake Forest notified EHCC and which EHCC promptly paid, the record contains no other notice from Lake Forest to EHCC that its rent was past due. Point denied.

### Point VII

In point VII, Lake Forest argues that EHCC's yearlong delay in paying the rent for the months of April, May, and June 2020, during the Covid-related closure, is inconsistent with the trial court's finding that EHCC exercised its option by holding over and paying rent. We find that under our *Murphy v. Carron* standard of review, there is substantial evidence in this record supporting the trial court's finding. *Day v. Hupp*, 528 S.W.3d 400, 411 (Mo. App. E.D. 2017).

Lake Forest's treasurer and secretary Paula Mandel testified that, other than during the three-month Covid-related closure, EHCC continued to pay rent and Lake Forest continued to receive and deposit that rent through January 2021. Moreover, even the Covid-related late rent was ultimately paid and deposited by Lake Forest in April 2021. This record fully supports the judgment and is fatal to Lake Forest's assertion regarding these delayed rent payments.

---

[4] EHCC delivered the gross receipts statement from its CPA, Sikich, LLP, by the deadline.

11

**Point VIII**

In point VIII, Lake Forest argues that the trial court should have disregarded the rent payments EHCC made and Lake Forest accepted <u>after</u> Lake Forest's May 19, 2020, letter in which Lake Forest purported to terminate the Lease. This point fails on several levels: the most glaring of which is that Lake Forest accepted and deposited the same rent payments it now claims the trial court should have disregarded. We have already held there was abundant evidence supporting the trial court's conclusion that EHCC, by holding over and continuing to pay rent, demonstrated its intent to renew the Lease and that Lake Forest, by accepting the rent payment for well over a year, demonstrated its intent to waive the written renewal notice requirement in the Lease.

Lake Forest cites *Lucas Hunt Village Co. v. Klein*, 218 S.W.2d 595, 596 (Mo. banc 1949), and *Haack v. Great Atlantic and Pacific Tea, Co*., 603 S.W.2d 645, 647 (Mo. App. E.D. 1980), for its contention that its acceptance of rent after it claims to have terminated the Lease on May 19, 2020, does not create an implied tenancy. Lake Forest's argument demonstrates its misunderstanding of the law applicable to this case. Our holding does not depend on a finding that an implied tenancy was created. Our holding is that, by its conduct, EHCC exercised its option to renew, and Lake Forest waived its right under the Lease to timely written notice. Therefore, neither of those cases is applicable to our analysis. Point denied.

**Point IX**

In point IX, Lake Forest claims the trial court erred by failing to give effect to its May 19, 2020, letter, which it argues terminated the Lease. Lake Forest's argument fails. The trial court found the May 19, 2020, letter did not terminate the Lease, and we agree. *Bowers v. Bowers*,

543 S.W.3d 608, 613 (Mo. banc 2018) (when evidence poses two reasonable but different inferences, we give deference to the trial court's assessment of evidence.)

The May 19, 2020, letter merely notified EHCC that Lake Forest had not received its written renewal notice by April 30, 2019, and that Lake Forest therefore considered the Lease terminated. Simply put, this letter did not terminate the Lease because it did not comply with the Lease's forfeiture provision and because the Lease had already been renewed as a matter of law.

Moreover, Lake Forest's reliance on *Car Wash Specialties, LLC. v. Turnbull,* 465 S.W.3d 481 (Mo. App. E.D. 2015), is misplaced. *Car Wash* is readily distinguishable because the tenant in that case did not assert, as EHCC does here, that it renewed the lease as a matter of law by holding over and paying rent, which the landlord accepted. Instead, the tenant in *Car Wash* asserted that a settlement agreement between the parties modified the lease and relieved the tenant of the obligation to notify landlord of its intent to renew. *Id.* at 486. Point denied.

## Conclusion

For the reasons set forth above, we affirm the judgment of the trial court.

_____
James M. Dowd, Judge

Michael E. Gardner, C.J., and
Lisa P. Page, J., concur.

13