**ATLAS RESERVE TEMPORARIES, INC., et al., Appellants,**

v.

**VANLINER INSURANCE COMPANY, et al., Respondents.**

Nos. WD 58425, WD 58477.

Missouri Court of Appeals, Western District.

April 17, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2001.

Application for Transfer Denied Aug. 21, 2001.

James C. Owen, Chesterfield, for appellants.

Michael A. Dallmeyer, George Bartlett, Jefferson City, William Hannay, Chicago, for respondents.

Before BRECKENRIDGE, P.J., ULRICH and HOWARD, JJ.

ULRICH, Judge.

Plaintiffs–Appellants [hereinafter "Plaintiffs"] appeal the summary judgment of the circuit court in favor of the Defendants Respondents, sixteen servicing insurance carriers who provided workers' compensation insurance policies to Plaintiffs [hereinafter "Insurance Carriers"] and the National Counsel on Compensation Insurance [hereinafter "NCCI"], on their claims for breach of contract against Insurance Carriers, and negligence against NCCI. Plaintiffs contend that the trial court erred in granting Defendants' Motions for Summary Judgment in that Defendants were not entitled to judgment as a matter of law because the surcharge provisions in Plaintiffs' contracts with the Insurance Carriers were not ambiguous in their language or application, and the plain language of these contractual provisions recited an "additive" calculation of the surcharges as alleged by Plaintiffs in their petition. The judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings.

## I. Facts

Plaintiffs are Missouri employers who purchased workers' compensation insurance from Missouri's involuntary market[1] between September 1, 1991 and December 31, 1993. Plaintiffs could not otherwise obtain coverage in Missouri's voluntary market, but since workers' compensation insurance was mandatory for all Missouri employers with more than five employees, they were forced into the involuntary market. Insurance Carriers are the sixteen servicing insurance carriers who provided workers' compensation insurance policies to Plaintiffs through the involuntary market. NCCI is a not-for-profit corporation and licensed rating organization responsible for administering Missouri's involuntary market.

The Missouri Division of Insurance [hereinafter "MDI"] is vested with the sole authority to set and adjust workers' compensation rates, premiums, and surcharges. The approval of new workers' compensation rates is a multi-step process. As the rating organization, NCCI is responsible for collecting information concerning the policies, premiums, and losses of the workers' compensation insurance

---

1. Missouri's involuntary market is also commonly referred to as the residual market, Assigned Risk Plan, or "the pool."

carriers. Using this data, NCCI then prepares and submits a proposal to revise the workers' compensation rates to the MDI. Upon the filing of a proposal made by NCCI, the MDI holds a public hearing to discuss the proposal. After a hearing, the MDI will issue an order accepting, rejecting, or modifying NCCI's proposal to revise rates.

Once a new rate is authorized by a MDI rate order, it still must be implemented into the existing employers' workers' compensation insurance policies. These new rates are put into effect through the use of endorsements, written by the NCCI and approved by the MDI, that attach to and become a part of the existing policies of the insureds.

The MDI authorized the addition of two surcharges to policies obtained through the involuntary market. In a rate order issued May 29, 1990, the MDI approved NCCI's proposal to surcharge experience rated risks in the involuntary market when an employer's actual losses exceed their modified expected losses, as determined using values from the experience rating modification calculation. This surcharge was called the Assigned Risk Adjustment Program Surcharge [hereinafter "ARAP surcharge"]. The 1990 rate order that approved the ARAP surcharge provided, in pertinent part:

2. The Assigned Risk Adjustment Program is approved as proposed by the NCCI to be effective September 1, 1990, and thereafter on new and renewal business except that the maximum surcharge shall be limited to 25%.

In a second rate order issued August 1, 1991, the MDI approved a modified version of NCCI's proposal to impose a 20% surcharge on all risks in the involuntary market [hereinafter "20% surcharge"]. This rate order modified NCCI's proposal by limiting the surcharge to only those risks in the involuntary market with an experience modification factor greater than 1.20. The 1991 rate order that approved the 20% surcharge provided, in pertinent part:

11. The NCCI proposal to implement a surcharge of +20% on all risks insured by the assigned risk pool is unfair and unreasonable. By reason of Finding of Fact No. 9 a surcharge of +20% to any risk in the assigned risk pool with an experience modification factor of 1.20 or greater is fair and reasonable as a method to encourage those risks in the pool which are experiencing significantly higher-than-expected losses to take steps to reduce such losses in the future, while at the same time, avoiding the implementation of a surcharge on those risks which are placed in the pool for reasons unrelated to loss experience.

In order for these two surcharges to take effect, they must have been made a part of the contracts between Plaintiffs and Insurance Carriers through endorsements approved by the MDI, which attached to the existing policies. NCCI submitted to the MDI drafts of proposed endorsements for both surcharges. The MDI approved the NCCI authored endorsements without alteration. The ARAP surcharge endorsement was approved by the MDI on March 16, 1992, but this approval was made retroactive to September 1, 1990. The endorsement that implemented the 20% surcharge was also approved by the MDI on March 16, 1992, but this approval was made retroactive to September 1, 1991.

Once these two surcharges became effective, Insurance Carriers calculated the employers' surcharged premiums by applying the first surcharge to the employers' total modified premium, and then the second surcharge was calculated by applying the second surcharge to this new value,

the sum of the total modified premium plus the first surcharge.[2] Plaintiffs believe that this "multiplicative" method of calculation was contrary to the rate orders and ensuing endorsements approved by the MDI, and, thus, this calculation ultimately resulted in Insurance Carriers breach of contract.[3] Plaintiffs, therefore, filed a petition in the Circuit Court of Cole County on February 20, 1997. In their action for damages, Plaintiffs alleged that Insurance Carriers did not use the proper calculation method for the two workers' compensation surcharges forcing Plaintiffs to overpay the total premium owed. Plaintiffs further alleged that NCCI was negligent in its administration of the involuntary market in that it allowed Insurance Carriers to calculate and assess premiums in violation of the laws of the State of Missouri.

In July 1999, NCCI moved for summary judgment. Shortly thereafter, Insurance Carriers followed suit and filed its motion for summary judgment in August 1999. After written discovery and depositions, the parties submitted briefs, and oral argument was heard on the motions on November 10, 1999. On March 9, 2000, the circuit court granted summary judgment in favor of NCCI and Insurance Carriers and against Plaintiffs, holding that the "multiplicative" approach was the proper method for calculating Plaintiffs' premiums. This appeal followed.

## II. Standard of Review

An appellate court's standard of review of a summary judgment is essentially de novo. *Lewis v. Snow Creek, Inc.*, 6 S.W.3d 388, 392 (Mo.App. W.D.1999). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(3). The record is reviewed in the light most favorable to the party against whom judgment was entered and the non-moving party is granted the benefit of all reasonable inferences from the record. *Lewis*, 6 S.W.3d at 392.

In this case, the parties do not dispute the material facts, but disagree on the proper application of the MDI approved surcharges to the Plaintiffs' workers' compensation premiums. "Where the underlying facts are not in question, disputes arising from the interpretation and application of insurance contracts are matters of law for the court." *Southeast Bakery Feeds, Inc. v. Ranger Ins. Co.*, 974 S.W.2d 635, 638 (Mo.App. E.D.1998). And matters of law require de novo review. *Dishman v. Joseph*, 14 S.W.3d 709, 715 (Mo.App. W.D. 2000).

---

**2.** The order the surcharges were applied often varied. At times, Insurance Carriers would assess the ARAP surcharge on the total modified premium and then assess the 20% surcharge on the combined amount, the total modified premium plus the ARAP surcharge. At other times, Insurance Carriers would first assess the 20% surcharge on the total modified premium and then assess the ARAP surcharge on the combined amount, the total modified premium plus the 20% surcharge. In either event, the second surcharge was always assessed on an amount greater than the total modified premium, an amount equal to the total modified premium plus the first surcharge applied.

**3.** The multiplicative method of calculation is expressed in mathematical terms using the following formula:

$$[TMP(S_1 + 1)] \cdot (S_2 + 1) = \text{Total premium paid}$$

Plaintiffs argue Insurance Carriers should have used an additive method to calculate the premiums which is expressed in mathematical terms using the following formula:

$$[TMP(S_1 + 1)] + [TMP(S_2)] = \text{Total premium paid}$$

In the above formulas $TMP$ = Total Modified Premium, $S_1$ = ARAP surcharge factor, and $S_2$ = 20% surcharge factor.

### III. Points on Appeal

■ Plaintiffs raise three points on appeal. All three points turn on the interpretation of the contract endorsements and proper application of the surcharges to Plaintiffs' premiums. Plaintiffs argue that the plain language of the endorsements implementing the surcharge into the policies provides for an additive approach, and the trial court, therefore, erred in finding the language of the endorsements ambiguous, and ultimately holding, after considering extrinsic evidence, that the surcharge was intended to be applied using a multiplicative approach. Thus, the particular issue confronting this court requires the court to interpret the contracts between the parties including the surcharge provisions, which were made a part of the contracts between Plaintiffs and Insurance Carriers through NCCI authored endorsements that were approved by the MDI, and determine whether the provisions are ambiguous.

■ "The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). Unless the contract is ambiguous, the intent of the parties is determined based on the contract alone, and not based on extrinsic or parol evidence. *Id.; Tuttle v. Muenks*, 21 S.W.3d 6, 9 (Mo.App. W.D.2000). A contract is ambiguous only if its terms are reasonably open to more than one meaning, or the meaning of the language used is uncertain. *JCBC, L.L.C. v. Rollstock, Inc.*, 22 S.W.3d 197, 204 (Mo.App. W.D.2000); *Kearbey v. Kinder*, 972 S.W.2d 575, 578 (Mo.App. S.D.1998). To determine whether the terms of a contract are ambiguous, words should be given their natural and ordinary meaning. *Burns v. Plaza West Associates*, 979 S.W.2d 540, 547 (Mo.App.

W.D.1998). A contract or provision therein, is not ambiguous merely because the parties disagree over its meaning. *J.E. Hathman*, 491 S.W.2d at 264. Furthermore, courts are not permitted to create ambiguities in order to distort the language of an unambiguous policy. *Rodriguez v. General Acc. Ins. Co. of America*, 808 S.W.2d 379, 382 (Mo. banc 1991).

Plaintiffs argue that the contract between the parties, as it pertains to the ARAP and 20% surcharge provisions, is not ambiguous. Plaintiffs suggest that both surcharges are to ultimately be applied to the "total modified premium," which phrase is not capable of having more than one construction in its meaning, and that applying the surcharges to the "total modified premium" as specified in the contract results in an additive calculation of the surcharges. The relevant language from the ARAP surcharge provision, found in the MDI approved endorsement, reads, in pertinent part:

B. Surcharge Application

You must pay a surcharge if your actual losses exceed your modified expected losses, as determined using values from the experience rating modification calculation. **The surcharge factor will be applied to your manual premium multiplied by the experience rating modification.**

The 20% surcharge provision similarly provides, in pertinent part:

If the premium for this policy is subject to an experience rating modification factor, and if that factor is higher than that shown in the Schedule below, **the total modified premium for Missouri is subject to the assigned risk premium surcharge indicated.**

The trial court found these provisions ambiguous in their application in that the language of these endorsements does not

address how the surcharges are to be calculated together.

While the trial court may be correct in its finding that neither endorsement references the other surcharge or expressly provides any information about the interrelationship of the two surcharges, the plain language of each endorsement does provide a clear formula for calculating each surcharge. By the express terms of its endorsement, the ARAP surcharge was to only be applied to the manual premium multiplied by the experience rating modification. Likewise, the 20% surcharge endorsement expressly provided that the "total modified premium" was subject to the 20% surcharge. The "total modified premium" is the product of the manual premium multiplied by the experience rating modification. Accordingly, the express terms of both endorsements require application of the surcharges to the total modified premium.

Furthermore, an inference can be made that the endorsements do not provide specific direction regarding how the two surcharges should be calculated together because, as long as each surcharge is applied to the product of the manual premium multiplied by the experience rating modification or the "total modified premium," as provided in the endorsements, the calculation of the other surcharge is irrelevant. The calculation of the other surcharge would be relevant only when using a multiplicative approach. This approach requires application of the second surcharge to the total modified premium plus the first surcharge. But to apply the surcharges to a premium greater than the total modified premium, as required in using a multiplicative approach, would result in a calculation contrary to the terms of the contract and included endorsements.

The trial court erred as a matter of law in finding the surcharge provisions "am-biguous" because the surcharge provisions found in the contracts between the parties provide a clear method of calculation. Accordingly, the intent of the parties must be determined on the contract alone. The trial court, therefore, erred in relying on extrinsic evidence to determine that the parties intended the surcharges apply to the plaintiffs' premiums using a multiplicative calculation. The summary judgment of the trial court is reversed, and the case is remanded to the trial court for further proceedings.

BRECKENRIDGE, P.J., and HOWARD, J., concur.