**SONOMA MANAGEMENT COMPANY, INC., Appellant,**

v.

**Elmer L. BOESSEN, Respondent.**

**No. WD 59457.**

Missouri Court of Appeals,
Western District.

Jan. 2, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 5, 2002.

Application for Transfer Denied
April 23, 2002.

Duane E. Schreimann, Jefferson City, for appellant.

Dale C. Doerhoff, Jefferson City, for respondent.

Before SPINDEN, C.J., BRECKENRIDGE and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

This appeal arises from a declaratory judgment action filed by Sonoma Management Company, Inc. ("Sonoma") regarding its lease of a service station property from Elmer Boessen. The trial court entered judgment in favor of Boessen, ruling that the lease agreement terminated in April 2000 and that Sonoma had no right to extend the lease. On appeal, Sonoma claims the trial court erroneously declared and applied the law to the facts in interpreting the lease agreement. We reverse the trial court's judgment and remand for a hearing on damages.

**Factual and Procedural History**

In April 1973, Elmer Boessen acquired title and became the owner of a service station property located on the southwest corner of Dunklin and Jefferson Streets in Jefferson City, Missouri. Boessen, a computer programmer, purchased the property as an investment.

At the time Boessen acquired title, the property was subject to a Lease and Agreement dated April 21, 1971 ("1971 lease") between its former owner and the lessee, Star Service & Petroleum Company ("Star Service"). Boessen assumed rights as lessor under the 1971 lease. The term of the lease was twenty years, beginning on September 1, 1971 and terminating on August 31, 1991. The lease had two ten-year extension options, which the lessee could exercise no less than ninety days prior to expiration of the original lease term. The lessee's monthly rental payment was $600.00 under the 1971 lease.

In April 1985, Boessen and Star Service executed a Memorandum of Agreement ("1985 lease") to modify the 1971 lease as a result of improvements Boessen intended to make to the property. The memorandum, in effect, changed the term of the lease and the rental payments while incorporating other "conditions" of the 1971 lease. The memorandum stated:

The conditions of the [1985] Lease and Agreement shall be the same as those in a Lease and Agreement dated April 20, 1971 between [Boessen's predecessor owner and Star Service] ... with the following exceptions:

1. The term of Lease shall start May 1, 1985 and end on the 30th day of April 2000.

2. The rental amount shall be Six Hundred and No/100 Dollars ($600.00) per month until improvements are completed, but not later than ninety (90) days from the starting date, at that time rental shall be adjusted to 12% of all improvement cost [sic], and paid in equal monthly payments to Lessor, for the remaining term of this Lease and Agreement. Lessor shall pay for all improvements at time of completion.

Boessen substantially completed the improvements to the property by October 1986, at a construction cost of $63,972.00. Star Service's monthly rental thereafter increased to $1,279.72.

On September 28, 1989, Star Service assigned all of its lease rights in the prop-

erty to a third party, and the lease was thereafter assigned several times. On December 20, 1994, the lease was assigned to Sonoma Management Co., Inc., the Respondent herein. Upon such assignment, Sonoma assumed all rights in an existing sublease with FFP Operating Partners ("FFP"). The sublease entitled Sonoma to collect $3,800.00 in base monthly rental from FFP, with an annual 4% escalation. The sublease term was from July 21, 1993 through June 30, 1996, subject to two five-year renewal options. In 1996, Sonoma and FFP exercised the first option and extended the sublease through 2001.

On October 12, 1999, Sonoma sent a letter notifying Boessen of its intent to exercise the first ten-year option to extend the 1985 lease, with the renewal being effective May 1, 2000. Boessen rejected Sonoma's notice of extension by letter dated January 26, 2000, stating that the lease "expires on April 30, 2000, and there are no renewal options." Sonoma disagreed, believing that the 1985 lease incorporated the extension options from the 1971 lease. Sonoma further believed its notice of renewal was timely as it was given more than ninety days prior to the April 30, 2000 expiration date of the 1985 lease. Sonoma thereafter tendered rent for May 2000, but Boessen rejected the payment. Sometime after May 1, 2000, Boessen executed an agreement to lease the service station property directly to FFP at a monthly rental of $2,800.00.

On May 25, 2000, Sonoma filed a Petition in the Cole County Circuit Court, seeking, in Count I, a declaratory judgment concerning its right to renew the lease and, in Count II, damages against Boessen for conversion of rent from the sublease with FFP. After a bench trial, the court entered judgment in favor of Boessen. The court held that Sonoma had no right to lease the service station property

beyond April 30, 2000, and made the following findings of fact:

The Court finds that the "Memorandum of Agreement" between plaintiff and defendant (hereinafter referred to as the "1985 lease"), had an express "end on" date of April 30, 2000. The 1985 lease expired by its terms on April 30, 2000.

The Court further finds that even if the 1985 lease incorporated "conditions" from the earlier "Lease and Agreement" (hereinafter referred to as the "1971 lease"), this did not incorporate the extension options in the 1971 lease. Extension options are promises and not mere conditions.

The Court further finds that after the 1985 lease was signed, the Lessee twice tendered documents to defendant that would have created extension options. The first time this occurred was in 1986. Defendant declined to sign this document. The second time this occurred was in 1991. Again, defendant declined to sign the documents. By tendering these amendments, the Lessee demonstrated that its interpretation of the 1985 lease was the same as defendant's interpretation, which was that the 1985 lease did not have any extension options. Plaintiff is bound by this interpretation and estopped to take a contrary position.

The Court further finds that even if the 1985 lease incorporated the two extension options from the earlier 1971 lease (which it did not), plaintiff did not make a timely exercise of the options. That is because the Lessee failed to give written notice to Lessor of the election to exercise the extension option "not less than ninety days before the expiration of the original term of this lease."

Finally, the Court also finds that even if the renewal options in the 1971 lease were incorporated into the 1985 lease

(they were not), and even if there was timely notice of an intention to exercise the renewal options (there was not), judgment should nevertheless be against plaintiff and in favor of defendant because plaintiff breached the lease and lost any right to possession for failure to extinguish the liens against the leasehold estate within twenty days after notice was given to plaintiff on the existence of the liens.

Sonoma appeals.

## Points on Appeal

Sonoma raises three points on appeal, all of which hinge on interpretation of the 1971 Lease and Agreement and the 1985 Memorandum of Agreement. Sonoma claims the trial court erroneously declared and applied the law in determining: 1) that Sonoma had no right to extend the 1985 lease; 2) that Sonoma did not give Boessen timely notice to extend the lease under the 1971 lease; and 3) that Sonoma had no right to extend the lease because it failed to keep the property free and clear of liens. Based on these allegations of error, Sonoma requests that we reverse the trial court's judgment and remand for hearing on damages.

■ Review of this court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We must affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

Sonoma first challenges the trial court's finding that the 1985 lease did not incorporate the extension options from the 1971 lease. In making this finding, the court considered the language of the agreements, as well as parol evidence concerning the parties' negotiations pre-dating the 1985 lease and their subsequent conversations about further amendments to the lease. Sonoma contends the court erred in considering any extrinsic evidence because the two agreements clearly and unambiguously established Sonoma's right to renew the lease.

■ Interpretation of a contract is a question of law. *Robbins v. McDonnell Douglas Corp.*, 27 S.W.3d 491, 496 (Mo. App. E.D.2000). The cardinal rule of contract interpretation is to ascertain the parties' intention and to give effect to that intention. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). The intent of the parties is to be determined based upon the contract alone and not based on extrinsic or parol evidence unless the contract is ambiguous. *Atlas Reserve Temporaries v. Vanliner Ins. Co.*, 51 S.W.3d 83, 87 (Mo. App. W.D.2001). "A contract is ambiguous only if its terms are reasonably open to more than one meaning, or the meaning of the language used is uncertain." *Id.* In determining whether the terms of a contract are ambiguous, words should be given their natural and ordinary meaning. *Id.* A provision is not ambiguous merely because the parties disagree over its meaning. *Id.* Furthermore, courts are prohibited from creating ambiguities by distorting contractual language that may otherwise be reasonably interpreted. *Id.*

■ Applying these standards to the case at hand, we must first seek to determine the parties' intentions based on the language of the 1971 and 1985 lease agreements. The 1971 lease was for a twenty-year term, running from September 1, 1971 through August 31, 1991. The lease contained two ten-year extension options, which the lessee could exercise by giving notice to the lessor not less than ninety days before expiration of "original term of [the] lease." Boessen, as lessor, and Star

Service, as Sonoma's predecessor lessee, agreed to modify the original lease term by executing the 1985 Memorandum of Agreement. The memorandum stated that the 1985 lease "conditions" would be the same as those in the 1971 Lease and Agreement *except* that: 1) the lease term would "start May 1, 1985 and end on the 30th day of April 2000," and 2) the total annual rent payments would increase by 12% of the improvement costs.

Sonoma interpreted the memorandum to mean that the 1985 lease incorporated all provisions of the 1971 lease, except those two provisions specifically excluded and amended. Since the extension options in the 1971 lease were not specifically excluded by the memorandum, Sonoma understood they became part of the 1985 lease and could be exercised no less than ninety days prior to April 30, 2000, the amended termination date for the lease.

The trial court rejected this interpretation and focused on the language of the memorandum which stated that the "conditions" of the 1985 lease shall be the same as those in the 1971 lease. The court made a distinction between "promises" and "conditions." The court stated that the extension options in the 1971 lease were promises, not conditions, and therefore were not incorporated into the 1985 lease. The court offered no further explanation or legal authority for this differentiation.

On appeal, Boessen argues that a promise differs from a condition, in that a condition creates no rights or duties in and of itself. He cites *United States Acting Through the Agriculture Stabilization and Conservation Service v. Gerth*, 991 F.2d 1428, 1434 (8th Cir.1993), where the court stated:

> A promise is an assurance from one party that performance will be rendered in the future, given in a manner that the other party could rely on it. 3A *Corbin on Contracts* § 633, at 32. A condition, however, makes the duty of one party dependent upon performance by the other. *Id.* It creates no duties or rights in and of itself, but only limits or modifies rights or duties.

This distinction, as recognized by at least one federal court, is neither binding upon our interpretation of contracts under Missouri law nor instructive as related to the facts of the case before us. The *Gerth* decision arose in the context of determining whether a disputed contractual provision *operated* as a mutual promise or condition, where the provision was not specifically labeled as such in the contract documents. That situation is distinguished from the instant case, where the term "conditions" is directly referenced in the agreement and implicitly defined by its contextual use.

The definition of "conditions" argued by Boessen, and apparently applied by the trial court, is not applicable to the lease agreements in this case. The 1985 lease incorporates all *conditions* from the 1971 lease *except* the twenty-year term of the lease and the amount of rental payments. Neither of these exceptions would qualify as "conditions" under Boessen's definition of that term because they are not duties dependent upon the performance of the other party. Indeed, these exceptions would fit the definition of a "promise," as they are assurances that one party will perform in the future such that the other party could rely on it. It is therefore apparent that the term "conditions" as referred to in the 1985 Memorandum cannot be construed in the context urged by Boessen. .

Given this analysis, we find no legal basis for the trial court's critical distinction between "promises" and "conditions" in interpreting the 1971 and 1985 lease agreements. The term "promises" is not even

referred to in the lease agreements, and the term "conditions" is defined by reference to the two specifically excepted conditions (i.e., the term of the lease and rent payments). The trial court was obligated to interpret this term based on its natural and ordinary meaning as used in the context of the subject agreements. *Jake C. Byers, Inc. v. J.B.C. Invs.*, 834 S.W.2d 806, 816 (Mo.App. E.D.1992).

The word "condition" originates from the Latin phrases "condicion" and "condicio" which mean "terms of agreement." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 239 (10th ed.2000). Current dictionary definitions of "condition" include:

> 1a: a premise upon which the fulfillment of an agreement depends: stipulation[;] b: covenant[;] c: a provision making the effect of a legal instrument contingent upon an uncertain event;

*Id at 240.* These definitions reflect the two primary ways in which the word "condition" is commonly used in a contractual setting. The word may be used broadly, to refer to any or all provisions, premises, stipulations or covenants within an agreement; or it may be used more restrictively to refer to a specific type of contractual provision that only requires action contingent upon a future event.

■■■ Where a contract term is susceptible to multiple definitions, "it should be interpreted in the context of the subject matter of the contract ... and given its plain meaning." *CB Commercial Real Estate Group, Inc. v. Equity P'ships Corp.*, 917 S.W.2d 641, 646 (Mo.App. W.D.1996). The mere fact that two parties may argue competing definitions does not, alone, give rise to an ambiguity. "Seeming contradictions must be harmonized away if possible, and the court's interpretation should not reach an absurd or unreasonable result." *Id.* (citation omitted.)

The contextual usage of "conditions" enables us to interpret its meaning in the subject lease agreements. There is nothing in any of the lease documents to indicate that "conditions" restrictively refers only to those provisions in the 1971 lease which make the performance of an action contingent upon another's action. Rather, it is clear that "conditions" refers broadly to all provisions of the 1971 lease, except those specifically excluded. This construction is reasonable because the conditions excluded from and amended by the 1985 lease are not contingent action clauses, and therefore would not constitute "conditions" under the more restrictive definition of this term.

We conclude that the 1985 lease incorporated the extension options and all other provisions from the 1971 lease, except the term of the lease and the rental payments, which were specifically excluded and amended. The agreements entitled Sonoma to extend the lease beyond the April 30, 2000 termination date, upon timely notice of its intent to exercise this option. The intent of the parties to incorporate the extension option is evident based on the lease agreements alone; thus, the trial court erred in considering extrinsic evidence of their negotiations.

■■■ The court also erred in determining that Sonoma did not give timely notice of its intent to extend the 1985 lease. Sonoma tendered its notice on October 12, 1999, more than ninety days before the April 30, 2000 expiration of the 1985 lease. The trial court ruled the notice untimely because it was due "not less than ninety days before the expiration of the *original* term of [the] lease." Since the original (1971) lease was set to expire on August 31, 1991, the court's holding meant that Sonoma's extension notice was due by May 31, 1991. This interpretation of the contract documents is unreasonable and con-

trary to the parties' intent, as it would require Sonoma to have exercised its extension option nearly nine years (instead of ninety days) before the amended lease termination date of April 30, 2000.

The trial court's holding ignores the fact that the 1985 lease amended the termination date of the 1971 lease for *all purposes,* including the extension options. Thus, the extension options could be exercised no less than ninety days prior to the amended lease expiration date of April 30, 2000. Sonoma notified Boessen on October 12, 1999, that it intended to extend the 1985 lease for an additional ten-year period. This notice was timely and entitled Sonoma to retain all rights under the lease agreements from May 1, 2000 through April 30, 2010.

 Finally, we consider the trial court's holding that Sonoma lost possession rights under the lease agreements due to its failure to extinguish liens against the property. Boessen's attorney advised Sonoma of the liens in a January 26, 2000 letter, which also rejected Sonoma's extension notice. The letter asserted that Boessen could terminate the lease agreement if Sonoma failed to have the liens removed in twenty days.

The 1985 lease incorporated the following provision from the 1971 lease:

Lessee further covenants and agrees that during said term Lessee will not suffer the demised premises or any erection or improvements thereon or the estate of the Lessee in the same at any time during the said term to become subject to any lien, charge, or encumbrance whatsoever, and to indemnify and keep indemnified the Lessor against all such liens, charges, and encumbrances; it being hereby expressly agreed that the Lessee shall have no authority, express or implied, to create any lien, charge or encumbrance upon the demised premises or the improvements thereon or upon any estate therein.

In the event of any such lien, charge, or encumbrances attaching to the demised premises or any erection or improvements thereon, Lessor may pay and discharge the same, and for such payment Lessee agrees to reimburse Lessor, on demand, with interest at the rate of eight percent (8%) per annum from time of payment and together with all expenses and attorneys fees incurred as a result of any such breach thereof by Lessee.

To the extent that any liens attached to the subject property, the lease agreement limited Boessen's remedy. Boessen was entitled to pay and discharge the liens and then demand repayment from Sonoma, including interest, attorney's fees and expenses. The agreement did not allow Boessen to terminate the lease or otherwise abrogate Sonoma's possession rights based upon Sonoma's failure to keep the property free and clear of liens.

Boessen did not discharge the liens of which he complains and, therefore, he failed to invoke the only remedy available under the agreement. The trial court erred in finding that Boessen could void the lease because the clear language of the agreement did not provide that option. Sonoma's possession rights were not forfeited and could not be terminated as a result of the liens.

We reverse the trial court's judgment, as it erroneously applied the law in interpreting the 1971 and 1985 lease agreements. Sonoma's extension rights under the 1971 lease were incorporated under the 1985 lease, and Sonoma timely exercised those rights to renew the lease for a ten-year period beginning May 1, 2000. Consistent with its rights to the property,

Sonoma also was entitled to receive FFP's sublease payments from May 1, 2000 until the termination of the sublease in 2001 (and beyond if the sublease is extended). Boessen improperly converted those payments by leasing the property directly to FFP and collecting the rent, in violation of his contractual obligations to Sonoma. We therefore remand this case to the trial court for a hearing and determination of Sonoma's damages.

All concur.