Lisa Van Amburg, Judge
Fairmont/Monticello (Landlord) appeals the trial court's judgment in favor of LXS Investments (Tenant) in this action for unlawful detainer. We reverse and remand.
Background
Landlord owns real estate in the City of St. Louis. Tenant operates a restaurant called The Drunken Fish. In 2006, the parties entered into an agreement for the lease of commercial space at One Maryland Plaza in the Central West End neighborhood. As relevant here, that agreement provided as follows:
Default: In the event of any failure of Tenant to pay any rental due hereunder within thirty (30) days after the same shall be due, or any failure to perform any other of the terms, conditions, or covenants of this Lease to be observed *480 or performed by Tenant for more than ten (10) days after written notice of such default ... Landlord, besides other rights or remedies it may have, shall have the immediate right of re-entry .... ... Landlord does not waive its right to pursue any other right or remedy to which it may be entitled ....
Waiver. The waiver by Landlord of any breach of any term, covenant, or condition ... shall not be deemed to be a waiver of such term, covenant, or condition. ... The subsequent acceptance of rent hereunder by Landlord shall not be deemed to be a waiver of any preceding breach by Tenant of any term, covenant, or condition of this Lease, other than the failure of Tenant to pay the particular rent so accepted. ... Time is strictly of the essence of Tenant's performance of all covenants and agreements ... and in the payment of all sums to be paid.
In 2015, the parties entered into an amendment to the original lease providing in pertinent part:
Renewal Option: Provided Tenant is not then in default and has not been in default during the term of this Lease and any prior option term, whether or not Landlord shall have notified Tenant in writing of such default and whether or not such default shall have been cured by Tenant , ... Tenant shall have the right and option ... to extend the term of this Lease [for five years commencing January 1, 2017].
6.... In the event of any conflict between the Lease and this First Amendment, the terms and conditions of this First Amendment shall control.
In 2016, Tenant notified Landlord of its intent to renew the lease for another 5-year term. Landlord rejected Tenant's attempt to renew, citing Tenant's failure to perform certain obligations during the existing term (e.g., to pay rent on time, furnish insurance policies and maintenance agreements, maintain windows, hydroflush sewer lines, maintain grease traps). Tenant refused to vacate the premises, asserting that it wasn't in default because Landlord never provided Tenant notice as contemplated in the Default clause. Landlord responded that notice wasn't required under the Renewal clause and filed suit against Tenant for unlawful detainer.
At trial, Tenant testified as follows. Tenant negotiated a lower rent rate under the amendment due to the condition of the premises, and Tenant had since spent approximately $200,000 on improvements. Though Tenant had not read or complied with the lease in the aforementioned respects, it had always maintained the policies, paperwork, and utilities in question, it just hadn't provided proof of the same to Landlord because Landlord never asked. Though some rent payments were posted after the due date, Tenant generally paid rent when it received an invoice, and, under the lease, late charges didn't apply until five days after the due date. Tenant suggested that Landlord was attempting to get out of the lease for a more lucrative deal. Tenant argued that its renewal was effective and enforceable-Landlord wasn't entitled to refuse. Landlord admitted that it had accepted late payments in the past but noted that the Waiver clause reserved Landlord's rights as to any instances of non-compliance. Landlord argued that, notwithstanding the Default clause, the Renewal clause specifically predicated Tenant's right to renew upon the absence of non-compliance, regardless of notice.
The trial court entered judgment in favor of Tenant, reasoning that a conflict between the Renewal and Default clauses created an ambiguity, which should be construed against Landlord as the drafter. Thus, the court interpreted "default" in *481 the Renewal clause to first require notice as provided in the Default clause. As such, the court concluded that Tenant was not in "default," so Tenant effectively exercised its option to renew. Landlord appeals and asserts that the trial court's interpretation is erroneous as a matter of law.
Standard of Review
In a court-tried case, we will affirm the judgment of the trial court unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. J.H. Berra Construction Co. v. City of Washington , 510 S.W.3d 871, 874 (Mo. App. E.D. 2017), citing Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence in the light most favorable to the judgment and defer to the trial court's credibility determinations. Id. However, the interpretation of a contract is a question of law, which we review de novo without deference to the trial court. Id.
Analysis
In its sole point, Landlord contends that the trial court's interpretation of the parties' agreement is erroneous as a matter of law. More specifically, Landlord asserts that the agreement is not ambiguous; rather, the Renewal clause expressly conditions Tenant's right to renew upon the absence of default, without regard to notice. Thus, in light of Tenant's admitted non-compliance, Tenant is not entitled to renew the lease for another five-year period.
"To determine whether a contract is ambiguous, we consider the whole document and, absent any definition within the contract, give contract terms their natural and ordinary meaning." Patterson v. Rough Rd. Rescue, Inc. , 529 S.W.3d 887, 894 (Mo. App. E.D. 2017). The test for ambiguity is whether the disputed language is reasonably susceptible of more than one meaning when the words are given their plain meaning as understood by an average person. Id. A contract is not ambiguous merely because the parties disagree over its meaning. Sonoma Mgmt. Co. v. Boessen , 70 S.W.3d 475, 479 (Mo. App. W.D. 2002). "Seeming contradictions must be harmonized away if possible, and the court's interpretation should not reach an absurd or unreasonable result." Id.
Initially, the parties debate whether "default" in the Default and Renewal sections means something different than "breach" in the Waiver section. Tenant contends that default doesn't rise to the level of breach until after 10 days' notice and failure to cure. This interpretation is unsupported by the plain language of the contract as well as standard dictionary definitions. The Default section of the contract describes default as any failure to pay rent or failure to perform any term, covenant, or condition. The Waiver section refers to any breach of any term, covenant, or condition, including failure to pay rent as a breach. Black's Law Dictionary defines both breach and default as a failure to perform. Black's Law Dictionary (10th ed. 2014). From the relevant provisions and the entirety of the agreement read as a whole, it is clear that the terms default and breach are employed interchangeably to signify any form of non-compliance with the contract. "Courts are prohibited from creating ambiguities by distorting contractual language that may otherwise be reasonably interpreted." Id.
Furthermore, we find no ambiguity with respect to Tenant's conditional right to extend the term under the Renewal clause, this notwithstanding the Default clause. The amendment containing the Renewal clause expressly directs that, in the event of any conflict between the two, the amendment controls. Moreover, even were *482 the parties' agreement silent in this regard, Missouri precedent would compel the same result. "When a provision of a contract deals with a specific situation, it will prevail over a more general provision if there is ambiguity or inconsistency between them." Five Star Quality Care-MO, L.L.C. v. Lawson , 283 S.W.3d 811, 815 (Mo. App. W.D. 2009). The Renewal clause is more specific than the general Default clause as to Tenant's right to renew. Consistent with the foregoing principles of contract interpretation as well as the plain language of the parties' agreement, we find the Renewal clause dispositive.
Conclusion
Pursuant to the express language of the parties' agreement, Tenant's right to renew was conditioned upon the absence of any form of non-compliance with the terms of the lease, regardless of whether Landlord provided notice. While we acknowledge the harshness of this result for Tenant, particularly given Landlord's historical leniency, as a matter of law, we are bound to enforce the terms of the contract as written. The judgment is reversed and remanded to the trial court for entry of judgment in favor of Landlord and for the court's consideration of other relief as requested in Landlord's petition.
Colleen Dolan, P.J., and James Dowd, C.J., concur.